# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

## CIVIL ACTION NO. 3:12-CV-866-H

DARIEL S. COX                                                                                    PLAINTIFF

V.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                                   DEFENDANT


## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The plaintiff, Dariel S. Cox filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied his application for disability insurance and supplemental security income benefits (docket no. 1). At issue is whether the administrative law judge erred when he determined Mr. Cox's subjective claims of disabling back pain were not adequately supported by the medical evidence in the record. After reviewing the parties' submissions (docket nos. 12 and 15) and the administrative record (docket no. 10), the magistrate judge recommends that the district court affirm the decision of the Commissioner of Social Security.

### I. PROCEDURAL HISTORY

Mr. Cox applied for disability insurance and supplemental security income benefits in February 2011 and alleged he became disabled as of January 2008.[1] After his application was denied initially and on reconsideration, Mr. Cox filed a request for a hearing before an

---

[1] Administrative Record ("Admin. R.") at 57-64, 82-83, 298-307 (docket no. 10).

administrative law judge ("ALJ"). The ALJ conducted the hearing in June 2012[2] and then in September 2012, issued a decision unfavorable to Mr. Cox by determining that none of his impairments met or equaled any Listed Impairment and that he retained the residual functional capacity to perform light work with certain restrictions.[3]

Mr. Cox timely appealed the administrative law judge's decision to the Appeals Council, which declined to review the decision of the ALJ.[4] He then timely appealed to this court, asserting that the ALJ erred by failing to follow the directives of 42 U.S.C. §423(d)(5)(A), which requires an ALJ to, among other things, consider "statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms."[5]

## II. STANDARDS OF REVIEW

The district court must affirm the conclusions of the Commissioner of Social Security unless the administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. §405(g); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008)(defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citing

---

[2] *See generally* Admin. R. at 314-349.
[3] *See generally* Admin. R. at 14-24.
[4] Admin. R. at 7-10.
[5] The relevant portion 42 U.S.C. §423(d)(5)(A) states:
   An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. *An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged* and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

2

*Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If a reasonable mind could accept the evidence relied upon by the administrative law judge as adequate to support the challenged conclusion, this court cannot reject it, even if there exists evidence that could support a decision the other way. *See Cotton v. Sec'y Health & Human Servs.,* 2 F.3d 692, 695 (6th Cir. 1993).

### III. FINDINGS OF FACT

The ALJ determined that Mr. Cox suffered from the severe impairments of degenerative disc disease, obesity, depression/dysthemic disorder, and a history of alcohol abuse in remission, and was therefore not capable of returning to his past relevant work, but retained the residual functional capacity to perform light unskilled work with certain restrictions.[6]

Mr. Cox does not challenge the ALJ's conclusions with respect to his other physical problems or his psychological impairments, but asserts that his back pain renders him completely unable to work, because it so severely interferes with his ability to walk, sit, stand, and sleep.[7] The ALJ considered Mr. Cox's subjective complaints regarding the severity of his back pain and its side effects (*e.g.*, fatigue), but concluded they were exaggerated and unreliable based on the medical evidence in the record.[8] Mr. Cox generally asserts that this conclusion was wrong and directs the court's attention to the following six specific issues.

**A. Whether the ALJ Considered the Results of an X-ray taken in February 2011**

On February 23, 2011, an x-ray was taken of Mr. Cox's lumbar spine.[9] The radiologist's report of the film stated:

> FINDINGS There is normal alignment of the lumbar spine. There is decrease vertebral body height of T12 chronic in nature. There is narrowing of the disc space at L5-S1 with sclerosis and large osteophyte formation. The soft tissue is unremarkable.

---

[6] Admin. R. at 16-17.
[7] *See generally* Pl's Fact and Law Summ. at 5-9.
[8] *See* Admin. R. at 15-22.
[9] Admin. R. at 197.

3

> IMPRESSION  Severe degenerative disc changes at L5-S1. There is slight decreased vertebral body of L1 most likely chronic in nature.[10]

Mr. Cox asserts that his pain "can be largely explained by severe degenerative disease at L5-S1," as shown in in the February 2011 x-ray, and asserts it is arguably the most important piece of evidence in the file, so the ALJ's failure to discuss it with particularity renders his analysis "fatally flawed."[11]

The report in question is contained within a group of emergency room records identified as Exhibit 5F in the ALJ's opinion.[12] Although Mr. Cox is correct that the ALJ never refers to the "February 23, 2011, x-ray" as such, he is wrong when he states that the ALJ failed to discuss it. In the ALJ's evaluation of whether Mr. Cox's back pain meets or equals in severity the criteria of Listing 1.04, he states: "The claimant's diagnostic imaging shows some disc space narrowing and osteoarthritic changes but does not establish nerve root compression, arachnoiditis, or spinal stenosis. (Ex. 3F, 5F, 9F, 17F)."[13] The ALJ's summary of the evidence is entirely consistent with the radiologist's comments with respect to the February 2011 x-ray.

In addition, the evidentiary value of the February 2011 x-ray is not as significant as Mr. Cox asserts, because it is not the most recent diagnostic imaging in the file. Mr. Cox had another x-ray taken in February 2012. That image is included in Exhibit 17F, which the ALJ cited as a reference following his summary analysis of all the diagnostic imaging in the record. The radiologist's report of the February 2012 x-ray states:

---

[10] Admin. R. at 197.
[11] Pl's Fact and Law Summ. at 6.
[12] Admin. R. at 20. The documents referred to as Exhibit 5F are found at Admin. R. 176-201.
[13] Admin. R. at 17.

4

> Five views of the lumbar spine show narrowing of the L5-51 disk space with a slight vacuum effect. No other significant abnormalities. **SUMMARY:** Degenerative disk disease, L5-S1.[14]

Mr. Cox does not explain why the February 2011 x-ray is of greater diagnostic value than the February 2012 x-ray, or present any evidence that the radiologist's report regarding the February 2012 x-ray is inaccurate. The magistrate judge therefore finds that there exists substantial evidence in the record to support the ALJ's summary of the various imaging reports, even though he does not refer to any of them specifically by date or page number.

### B. Evidence Regarding the Necessity of a Cane for Mr. Cox to Ambulate Successfully

When Mr. Cox appeared for his consultative examination with Dr. Martin Huecker, he used a cane to help him walk.[15] In his opinion, the ALJ discounted Mr. Cox's statements regarding the severity of his pain in part because:

> It is noted, however, that even though the claimant reports using a cane most of the time, his doctor notes no signs of atrophy, weakness, imbalance, or loss of coordination and gives no indication that the claimant requires a cane for ambulation.[16]

Mr. Cox argues only that this statement is improper because "[i]t would seem redundant that a doctor would make a specific finding that a patient required a cane for ambulation when a patient had already acquired a cane and was using it."[17]

Mr. Cox does not assert any error, however, with respect to the rest of the statement, in which the ALJ accurately observes that there exists no medical evidence that he suffers from atrophy, weakness, imbalance, or loss of coordination -- conditions that would be ameliorated by the use of a cane.[18] Nor does Mr. Cox explain why he is consistently described as "ambulatory," without any

---

[14] Admin. R. at 296.
[15] Admin. R. at 202-206, Dr. Marin Huecker is not Mr. Cox's treating physician, but a state-agency doctor hired to perform medical examinations of disability claimants.
[16] Admin. R. at 20 (internal citations omitted).
[17] Pl.'s Fact and Law Summ. at 7.
[18] *See generally* Admin. R. at 154-201, 211-227, 288-297.

modification or mention of the use of a cane, in the records of his many emergency room visits.[19] Accordingly, the magistrate judge finds that there exists substantial evidence in the record to warrant the ALJ's decision to question whether Mr. Cox needs a cane to walk.

### C. Whether Mr. Cox's Treatment Records Reflect that He Consistently Demonstrates Symptoms Similar to His Behavior During the Administrative Hearing

At the conclusion of the administrative hearing, the ALJ noted on the record that Mr. Cox had changed positions approximately seventeen times during the forty-five minute long hearing.[20] In his opinion, as additional support for his decision to discount the credibility of Mr. Cox's subjective complaints of pain, the ALJ stated:

> [T]he claimant changed positions frequently throughout his disability hearing in an apparent attempt to create the impression that he is unable to maintain a position for any length of time; he did the same during a consultative examination performed for purposes of this disability claim. His treatment records document no such behavior during medical appointments or counseling sessions that are not directly related to his application for benefits.[21]

Mr. Cox asserts that the second statement regarding the contents of his treatment records is factually incorrect.

There are a few records from Mr. Cox's various providers which specifically describe behavior similar to what the ALJ observed at the administrative hearing. When Mr. Cox was first asked to stand to relieve his pain during the hearing, the ALJ noted he was sweating profusely, a symptom Mr. Cox's licensed clinical social worker observed in May 2011.[22] She noted that Mr. Cox reported it was due to his pain, and observed that Mr. Cox's gait was slow for the same reason.[23] In January 2012, Mr. Cox's social worker observed that Mr. Cox had to stand

---

[19] *See* Admin. R. at 176-201, 258-276.
[20] Admin. R. at 348.
[21] Admin. R. at 20 (internal references omitted).
[22] Admin R. at 217.
[23] Admin R. at 217.

6

at times to decrease pain.[24] And, in May and July 2011, Mr. Cox's primary care doctor observed that Mr. Cox appeared to be in pain and that he had an antalgic gait."[25] In July 2011 Mr.Cox's doctor also observed that Mr. Cox sat and rose up from his chair with difficulty.[26] Yet, all of these records were created after Mr. Cox had filed for disability benefits, and both providers were aware of that fact. There are no records documenting Mr. Cox's need to change position frequently, or any difficulty standing or sitting, prior to his decision to file a claim for benefits. Moreover, even after Mr. Cox filed his claim for benefits, the vast majority of his medical records do not document any behavior similar to what he demonstrated at the administrative hearing and during his consultative examination. The magistrate judge therefore finds that substantial evidence exists to support the ALJ's stated concern that Mr. Cox may have been exaggerating his symptoms at the hearing and during his consultative examination.

### D. Whether Mr. Cox's Allegations Regarding the Severity of His Pain are Supported by the Records Pertaining to His Use of Narcotic Medications

The ALJ also remarked that another sign indicating that Mr. Cox may be overstating his limitations is his medications history:

> The claimant is repeatedly described as being in no acute distress even though he reports constant, severe pain, even with medication. He has not required frequent medication increases. On the contrary, his doctor has attempted to wean him off of narcotics, which suggests that he does not consider the claimant's symptoms to be debilitating without them. The claimant exhibited heightened symptoms during one emergency room visit after running out of medication but otherwise has not required emergency treatment for pain since he established care with a primary care physician. His doctor has even observed that he may be exhibiting exaggerated pain responses.[27]

---

[24] Admin. R. at 284.
[25] Admin. R. at 214, 223. An "antalgic gait" is a gait in which the stance phase of the gait is noticeably shorter than the swing phase of the gait (also known colloquially as a limp).
[26] Admin. R. at 214.
[27] Admin. R. at 20 (internal references omitted).

Mr. Cox specifically asserts that it was incorrect for the ALJ to interpret a doctor's decision to wean Mr. Cox off narcotics as evidence that his primary care physician does not consider his condition to be debilitating without them.

Mr. Cox's argument has some limited support in the fact that there are no treatment notes in which Mr. Cox's primary care physician specifically states that Mr. Cox's use of narcotics may not be medically necessary to manage his pain. Yet, the ALJ correctly summarizes the record in the rest of the passage stated above, particularly with respect to the statement that Mr. Cox only sought treatment when required to obtain refills of his medication and that he had consistently been prescribed the same dosage of narcotic medications.[28]

Moreover, the notes regarding the decision to wean Mr. Cox off narcotics were written in the same month that Mr. Cox's most recent x-ray of record was taken.[29] On the radiologist's report of that imaging, Mr. Cox's primary care physician wrote "Tell patient his back x-ray only showed narrowing of core disc space,"[30] which supports the ALJ's analysis regarding the necessity of keeping Mr. Cox on narcotics medication. The magistrate judge therefore finds that there exists substantial evidence to support the ALJ's statements regarding whether Mr. Cox's prescription history belies his claim of constant acute distress.

### E. Whether Mr. Cox is Unable to Afford Additional Therapy or Treatment

Mr. Cox also asserts that the ALJ improperly relied upon his failure to fully avail himself of treatment or therapy that might alleviate his symptoms. In his opinion, the ALJ stated:

> The claimant has not attempted physical therapy, pain management, therapeutic massage, chiropractic adjustments, or other treatments that may relieve his symptoms, which further suggests that they are not as limiting as he claims.

---

[28] *See* Admin. R. at 211-227, 258-297.
[29] *See* Admin. R. at 287-88, 296.
[30] Admin. R. at 296.

There are, however, several recent treatment notes that indicate Mr. Cox has agreed to surgery, that he is awaiting physical therapy, and that he is awaiting further diagnostic imaging, which suggest that he has not chosen to forego non-medicinal treatments.[31] There are also repeated references to his lack of income, which might explain why he did not pursue those therapeutic options.[32] The ALJ did not acknowledge Mr. Cox relies upon the Kentucky Physician's Care ("KPC") Program, rather than any insurance or undeclared source of income to meet his medical needs.[33] KPC is a helpful program, but no guarantee that an impoverished person will be able to obtain specialized treatment. Accordingly, his decision to discount Mr. Cox's credibility because he had not pursued all theoretically available treatment options is not fully supported.

### F. Whether Mr. Cox's Complaints of Fatigue are Credible

Mr. Cox asserts that his lower back pain is disabling, in part, because it prevents him from sleeping and causes significant fatigue. In discounting this testimony, the ALJ stated: "[Mr. Cox] has not reported significant fatigue to his treating physician and is consistently described as alert and oriented during his examinations."[34] This statement is only partially accurate.

As Mr. Cox notes, he frequently reported to his doctor or social worker that he was experiencing difficulty sleeping and that he was unable to sleep more than four to five hours each night.[35] Yet, the ALJ is correct that every treatment record from a medical professional describes Mr. Cox as alert and oriented, and makes no mention of any other symptom of chronic

---

[31] Admin. R. at 216, 220, 291.
[32] Admin. R. at 324.
[33] Admin. R. at 221.
 *See also* http://chfs.ky.gov/dph/info/dpqi/Kentucky+Physicians+Care+(KPC)+Program.htm
[34] Admin. R. at 20.
[35] Admin. R. at 218, 279, 283, 284.

sleep deprivation.[36] Accordingly, the magistrate judge finds that there exists substantial evidence in the record to support the ALJ's analysis of Mr. Cox's complaints of severe fatigue.

### III. CONCLUSIONS OF LAW

The Sixth Circuit has developed a two-prong test, derived from the language of 42 U.S.C. §423(d)(5)(A) and consistent with the Soc. Sec. R. ("SSR") 96-7p, 1996 WL 374186 (1996), to evaluate a claimant's assertions of disabling pain. The ALJ must first examine whether there is objective medical evidence of an underlying medical condition. If so, then the ALJ must determine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Walters v. Comm'r of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

A claimant's subjective assessment of his symptoms is relevant to this analysis, but not conclusive. *See, e.g., Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004); *see also* 42 U.S.C. §423(d)(5)(A), 20 C.F.R. §404.1529(a), and SSR 96-7p. An ALJ may evaluate the credibility of a claimant's statements about the severity and effects of his pain. If the ALJ does so, a reviewing court must accord great weight and deference to those credibility determinations, because the ALJ had the opportunity to observe the claimant's demeanor and credibility during the hearing. *See Warner*, 375 F.3d at 392 (quoting *Walters,* 127 F.3d at 531).

An ALJ may properly discount a claimant's credibility if he finds contradictions among the medical records, claimant's testimony, and other evidence, including any failure by the claimant to avail himself of any suggested treatment to ameliorate his condition. *Id.* That being said, an ALJ's assessment of a claimant's credibility is not sacrosanct -- it must be supported by

---

[36] *See generally* Admin. R. at 211-227, 288-297.

10

substantial evidence in the administrative record, and the ALJ may not count a claimant's inability to afford treatment against him. *Id.; see also* SSR 96–7p.

The magistrate judge concludes that, while there exists some evidence to support Mr. Cox's claims regarding the severity of his pain and its side effects (*e.g.,* fatigue), there nonetheless exists substantial evidence in the record, correctly cited by the ALJ with sufficient specificity, to more than adequately support all but one of the reasons cited by the ALJ in support of his decision to question the credibility of Mr. Cox's complaints.

The only somewhat questionable reason the ALJ cited to in support of his decision to discount Mr. Cox's credibility Mr. Cox's failure to avail himself of treatments other than medication. The ALJ did not specifically consider, or sufficiently evaluate, the extent to which that failure might have been due to Mr. Cox's inability to afford such treatment. Nevertheless, although Mr. Cox reported that he lacks any financial resources, he did not specifically testify that he has been financially unable to pursue other recommended treatments that might afford him some relief. But, it is perhaps of no matter, since the ALJ cited many other reasonable and well-supported reasons for questioning the accuracy of Mr. Cox's subjective complaints about the severity of his pain. Accordingly, the magistrate judge concludes that any error with respect to the ALJ's comments about Mr. Cox's failure to pursue other treatment options is harmless and that his overall analysis is well supported by substantial evidence.

For the foregoing reasons, the magistrate judge concludes that there exists substantial evidence in the record to support the ALJ's determination that Mr. Cox is not completely disabled and retains the ability to perform light unskilled work with certain postural, exertional, and non-exertional restrictions.

## IV.  RECOMMENDATION

The magistrate judge concludes that Mr. Cox has not met his burden of establishing that the administrative law judge erred when he determined that Mr. Cox's lumbar spine condition did not meet or equal a listed impairment and that his psychological impairments were not disabling.  The ALJ's findings as to Mr. Cox's physical and mental residual functional capacities are supported by substantial evidence and cannot be set aside under 42 U.S.C. § 405(g).

Accordingly, the magistrate judge recommends that the district court enter an order affirming the decision of the Commissioner of Social Security.

DATE:

cc:  counsel of record

**<u>NOTICE</u>**

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived.  28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).